82 F.3d 419
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark BROWNLEE; Barbara E. Myers; John Brandon Pitale; and
Laura Johnkoski, Defendants-Appellants.
 Nos. 94-2350 to 94-2353.
 United States Court of Appeals, Sixth Circuit.
 April 16, 1996.
 
 Before: JONES, BOGGS, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Four defendants appeal their convictions and/or sentences on various drug charges. We affirm all the rulings from which the defendants appeal.
 
 
 2
 * The defendants were part of a conspiracy to smuggle marijuana from Mexico to Michigan between 1990 and October 1993. Pitale twice drove 250 pounds of marijuana from Texas to Michigan during 1992, and drove cash from Michigan to Texas on other occasions. Johnkoski helped arrange the storage of marijuana in Michigan and the distribution of marijuana to local sellers. Brownlee was one of these local sellers, operating out of a pool hall that he owned and operated. A co-conspirator testified at trial that Brownlee received five to six hundred pounds of marijuana from the conspiracy during 1992 and 1993, selling it on consignment.
 
 
 3
 Myer's role in the conspiracy is a little more unusual. She began as the organization's psychic, employed to determine safe times for transporting marijuana and money between Texas and Michigan. Her role soon expanded to handling some of the organization's cash transactions. Myers wired money to Texas at the direction of the conspiracy's leaders, and once paid bail for a courier whose arrest by local authorities somehow eluded her foresight. In addition, Myers let the conspiracy use her house to store marijuana and use her phone to make calls to co-conspirators.
 
 
 4
 Ten defendants went to trial on July 25, 1994. After the voir dire and opening statements, the government put on a witness, Angel Alago, who had taken part in the conspiracy, pled guilty, and agreed to cooperate with the government. Alago's testimony seems to have been convincing, for after he finished his first day on the stand, six of the ten defendants decided to plead guilty. These six defendants joined the group of co-conspirators who testified against the remaining four defendants: Brownlee, Pitale, Myers, and Angela Meyers. Pitale and Myers took the stand and denied their involvement. Brownlee did not. After thirteen additional days of trial, the three Appellants were found guilty. Angela Meyers was found not guilty.
 
 
 5
 Pitale and Myers were sentenced for conspiracy to distribute marijuana, 21 U.S.C. §§ 841 and 846, and money laundering, 18 U.S.C. § 1956. They did not have criminal histories, and were sentenced to 63 and 78 months of imprisonment, respectively. Brownlee was sentenced on the conspiracy count alone. His sentence was enhanced pursuant to USSG § 4A1.1(c) because of two prior state convictions, one for felonious assault and one for assault and battery.
 
 
 6
 Consolidated with these appeals is the appeal of Johnkoski, who is one of the six defendants who pled guilty after Alago's testimony at trial. The district court enhanced Johnkoski's sentence pursuant to USSG § 3B1.1(c) because of her role in the conspiracy, and pursuant to USSG § 3C1.1 for threatening a government witness. The government recommended a downward departure based upon a promise in the plea agreement, resulting in a base offense level of twenty-nine rather than thirty-two.
 
 II
 
 7
 Brownlee and Myers argue that certain warrants to search their residential and business properties were not based on probable cause. The affidavits presented to the magistrate, however, indicate a sufficient nexus between the activities of the drug conspiracy and each of the properties searched. Cf. United States v. Schultz, 14 F.3d 1093, 1097-98 (6th Cir.1994) (no probable cause for search warrant for defendant's safety deposit boxes where government did not present any evidence that boxes were related to criminal activity). At least two different confidential informants stated that the conspiracy stored marijuana and money at Myers's home, and phone records indicate frequent calls to her home number from travelling drug couriers. Similar phone records indicate frequent calls to Brownlee's place of business, a pool hall. Confidential informants stated that the conspiracy's leaders employed people who worked at the pool hall, and that two persons with the same first names as the conspiracy's leaders were known to deal drugs from the premises. In regard to Brownlee's home, informants testified that Brownlee received a hundred-pound shipment of marijuana at a prior residence two years earlier, and other evidence suggested that Brownlee had not stopped acting as an integral part of the conspiracy since that time. Because this evidence presents a "substantial basis for concluding that a search would uncover evidence of wrongdoing," we affirm the magistrate's finding of probable cause. Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331 (1983).
 
 
 8
 Brownlee, Myers, and Pitale argue that the district court erred in not declaring a mistrial after six of their co-defendants pled guilty on the evening before the third day of trial. The defendants claim that, when these six defendants were revealed as crooks, the jury lost its ability to believe protestations of innocence from the remaining defendants. We addressed a case where a defendant in a conspiracy case changed his plea during trial and testified against his co-defendant in United States v. Bavers, 787 F.2d 1022, 1028 (6th Cir.1985). Although the remaining defendant may have been "surprised" and "dealt a blow," we held that the prejudice that resulted was insufficient to require a mistrial. Id. at 1028. We note that in this case the district court gave an excellent instruction to the jury regarding the six defendants who pled. Bound by Bavers, we do not find that the district court erred.
 
 
 9
 The defendants also argue that the court erred by refusing to give the non-mandatory Sixth Circuit Pattern Jury Instruction 7.06B, which relates to the credibility of drug addicts who are testifying pursuant to a plea agreement. See United States v. Hessling, 845 F.2d 617, 620-21 (6th Cir.1988) ("appropriateness of this instruction is a matter of trial court discretion"). In this case, three witnesses admitted only marijuana use and occasional use of crack or powder cocaine. The witnesses were vigorously cross-examined, the defense attorneys mentioned drug use repeatedly during closing argument, and the trial court gave the standard instruction relating to the credibility of a witness testifying as part of a plea bargain. In these circumstances, the refusal to give the instruction was not an abuse of discretion.
 
 
 10
 Finally, two of the defendants attack their sentences. Brownlee argues that the use of his two prior convictions was inappropriate because his counsel, after a good faith effort, could not obtain evidence that the relevant courts informed Brownlee of his rights under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709 (1969). We reject this argument because the sentencing law places on Brownlee the burden of proving by a preponderance of the evidence a constitutional defect in any prior conviction that he wishes to omit from his criminal history. 21 U.S.C. § 851(c)(2). Brownlee admits that he was represented by an attorney at each of the previous proceedings, and the tiny possibility of a procedural defect in his waiver of rights does not outweigh the need to consider state law judgments valid and final unless conclusively shown to be otherwise. See Parke v. Raley, 506 U.S. 20, 30, 113 S.Ct. 517, 524 (1992) ("[it] defies logic to assume from the mere unavailability of a transcript (assuming no allegation of government misconduct) that Defendant was not advised of his rights").
 
 
 11
 Johnkoski argues that the district court committed three errors relating to her sentence. First, she alleges that the district court erred in enhancing her sentence pursuant to USSG § 3.B1.1(c) for being an "organizer, leader, manager, or supervisor in any criminal activity." The district court found that this enhancement was warranted because she recruited others to store marijuana for the conspiracy. This finding was properly based on testimony at trial and information in the presentence report, and we do not find it error. United States v. Silverman, 976 F.2d 1502, 1514 (6th Cir.1992) (sentencing judge may consider information in presentence report, despite its hearsay nature); Id. at 1508 (sentencing judgment may consider testimony at related trial, despite sentenced defendant's inability to cross-examine).
 
 
 12
 Johnkoski next claims that the district court erred in enhancing her sentence based on the finding that she "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice" by physically assaulting a potential witness. See USSG § 3C1.1, comment (n. 1). The district court based this enhancement on the testimony of a person whom Johnkoski attacked. The victim said that Johnkoski hit her repeatedly and told her that she would not "make it out of the courtroom alive." Johnkoski claims that the victim lied, but nothing in the record indicates that the district court abused its discretion by believing the victim's testimony.
 
 
 13
 Finally, Johnkoski argues that the government broke a promise made in the plea agreement to recommend a sentence at the minimum of the applicable guideline range. See Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (remand is required when prosecutor breaks promise to recommend reduction in sentence). The applicable guideline range was 121-151 months. However, the government abided by a separate promise in the plea agreement to recommend a downward departure. The judge eventually sentenced Johnkoski to 100 months, well below even the minimum sentence in the originally applicable range. Although technically the government made both its promised recommendations in the form of a single request for a "three-level" downward departure, the judge was free to determine the amount of the departure. Having secured a departure well below the applicable range, the government therefore kept its promise by other means and remand is not warranted.
 
 III
 
 14
 For the reasons discussed above, the convictions and sentences of Brownlee, Pitale, Myers, and Johnkoski, are AFFIRMED.